# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| EDINA REALTY, INC., | Civil No. 04-4371 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| THEMLSONLINE.COM, | |
| Defendant. | |

Mical K. Griffin, Susan M. Robiner, Erin C. Skold, and Rita A. O'Keeffe, **LEONARD STREET AND DEINARD, PA**, 150 South Fifth Street, Suite 2300, Minneapolis, MN 55402, for plaintiff.

David T. Schultz, Courtney M. Rogers Reid, and Mark J. Girouard, **HALLELAND LEWIS NILAN & JOHNSON PA**, 220 South Sixth Street, Suite 600, Minneapolis, MN 55402, for defendants.

Plaintiff Edina Realty has sued defendant, TheMLSonline.com, for infringement of plaintiff's rights in the trademark EDINA REALTY®.  Plaintiff alleges the following: trademark infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114 (Count I), unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II), trademark dilution under 15 U.S.C. § 1125(c) (Count III), deceptive trade practices under Minn. Stat. § 325D.44 (Count IV), trademark dilution under Minn. Stat. § 333.285 (Count V), unfair competition under Minnesota common law (Count VI), and trademark infringement under Minnesota common law (Count VII).

This matter is now before the Court on three motions:  (1) defendant's motion to exclude testimony by plaintiff's expert, Dr. Akshay R. Rao; (2) defendant's motion for summary judgment; and (3) plaintiff's motion for partial summary judgment on its claims of trademark infringement and dilution.  Plaintiff is not seeking summary judgment on its claim for monetary relief.  For the reasons discussed below, the Court denies defendant's motion to exclude plaintiff's expert, grants defendant's motion for summary judgment in part and denies it in part, and denies plaintiff's motion for partial summary judgment.

## BACKGROUND

Plaintiff is the largest real estate brokerage firm in the Midwest, and the third largest independent firm nationwide.  Plaintiff received a trademark registration from the United States Patent and Trademark Office for the EDINA REALTY® mark on June 25, 2002.  Plaintiff has an extensive marketing and advertising budget, and utilizes its mark in newspapers, radio, television, billboards, and lawn signs.  Plaintiff has also established an Internet presence for its mark with www.edinarealty.com.

Defendant is a full-service real estate brokerage firm that directly competes with plaintiff.  Plaintiff argues that defendant is riding the coattails of plaintiff's advertising and marketing efforts by using the Edina Realty mark.  Specifically, defendant uses the mark by purchasing it as a keyword Internet search term from Google and Yahoo, using it in the text of the advertisements that appear on Google and Yahoo, and using it in hidden links and hidden text on its website, TheMLSonline.com.

Over the past four years, defendant has purchased the following search terms from Google: Edina Realty, Edina Reality, EdinaReality.com, EdinaRealty, EdinaRealty.com,

www.EdinaReality.com and www.EdinaRealty.com. Defendant purchased a similar array of search terms from Yahoo. As the result of purchasing these search terms, defendant's "Sponsored Link" or "Sponsor Result" advertisement usually appears on the search engine result page at the top of the list of websites generated in response to a consumer's search for Edina Realty. The link to plaintiff's website appears in a less noticeable position further down the page.

Defendant writes the advertising text that appears in the sponsored links.[1] As an example, when a Yahoo user would type in "edina realty" as a search term, a sponsored link advertisement would appear, with the following headline in underlined font: "Edina Realty$^{TM}$ listings – MLS Home Search." The ad would also state, "Find Edina Realty$^{TM}$ and Twin Cities MN MLS listings. Also includes listings from Coldwell Banker Burnet, Counselor Realty and many more. Updated daily. Request showings online." The bottom line on the ad would state, "www.themlsonline.com."

Defendant's advertisements are visually separated from the natural search results. On Google and Yahoo, the advertisements are shaded blue, and appear under the caption "Sponsored Link" or "Sponsored Result." Yahoo further separates its advertisements by using bullet points, while its natural search results are numbered.

Tens of thousands of Internet users who use search engines to seek information about Edina Realty are presented with defendant's advertisement. The percentage of

---

[1] The advertising text has changed over time. In spring 2005, plaintiff persuaded Google to forbid defendant from using the phrase Edina Realty in its advertising, which Google allowed for the two previous years.

Google users that click on the advertisement and enter TheMLSonline.com, instead of plaintiff's website, has ranged from 31.6 to 17.9 percent.  The rate has been as high as 39.7 percent on Yahoo.

Defendant has also used plaintiff's mark in hidden links and text on its website. The hidden text is written in white font on a white background and includes phrases such as "Edina Realty information presented at TheMLSonline.com."  Hidden link and text cause Internet search engines to place defendant's website higher up than natural in the list of websites responsive to a search for Edina Realty.  The hidden links and text operate like metatags.  *See Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1044-45 (9th Cir. 1999) (providing a general overview of the relevant Internet technology).

On February 2, 2004, plaintiff wrote defendant and demanded that the company "cease and desist its infringing use of its registered trademark."  Defendant refused to do so, and this litigation ensued.

## ANALYSIS

### Defendant's Motion to Exclude Expert Testimony

Defendant moves to exclude testimony by plaintiff's expert, Dr. Akshay R. Rao. Under Rule 702, proposed expert testimony must satisfy three prerequisites to be admitted.  *See Lauzon v. Senco Prods. Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).  First, evidence based on scientific, technical, or specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact.  *Id.*  Second, the proposed witness must be qualified.  *Id.*  Third, the proposed evidence must be reliable or trustworthy in

the evidentiary sense, so that if the finder of fact accepts it as true, it provides the assistance the finder of fact requires. *Id.* The district court has a "gatekeeping" obligation to make certain that all testimony admitted under Rule 702 "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 597-98 (1993).

First, defendant argues that Rao's opinion lacks an adequate factual basis because he did not conduct a survey to assess consumer confusion from defendant's use of the Edina Realty mark. "Only if an expert's opinion is 'so fundamentally unsupported that it can offer no assistance to the jury' must such testimony be excluded." *Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995). A survey is not necessary. Rao relied upon consumer focus groups, plaintiff's marketing budgets, empirical studies on general Internet usage, empirical evidence found in materials published by the National Association of Realtors, and statistics tracking consumer use of defendant's sponsored link.

Second, Rao is qualified because he is an expert in consumer behavior and marketing. There is no merit to defendant's argument that his testimony should be nevertheless excluded because he has no particular expertise in the narrower field of consumer behavior relating to real estate brokerage services on the Internet.

Finally, defendant has criticized Rao's conclusions, but the Court's analysis must focus "solely on principles and methodology, not on the conclusions that they generate." *Daubert,* 509 U.S. at 595. "Vigorous cross-examination, presentation of contrary

evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596.

Accordingly, defendant's motion to exclude expert testimony of Rao is denied.

## Motions for Summary Judgment

### I.      Standard of Review

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### II.     Trademark Infringement

Plaintiff asserts five counts of federal and state trademark infringement claims.[2] First, defendant argues that plaintiff cannot show that defendant's purchase of the Edina Realty mark as Internet search terms is a "use in commerce" as required under the

---

[2] Claims under Minnesota law require the same analysis as claims under the Lanham Act. *See Daimlerchrysler AG v. Bloom*, 315 F.3d 932, 936, n.3 (8th Cir. 2003).  Claims for common law unfair competition and common law trademark infringement similarly parallel claims under the Lanham Act.  *Id.*  As such, the Court analyzes these claims together.

Lanham Act.  Second, defendant argues that plaintiff has not demonstrated evidence of a likelihood of confusion necessary to survive summary judgment.  Finally, defendant argues that its use of the Edina Realty mark is permissible under the doctrine of nominative fair use.

## A.      Use In Commerce

"[A] mark shall be deemed to be in use in commerce . . . on services when it is used or displayed in the sale or advertising of services . . . ."  15 U.S.C. § 1127. Defendant argues that its purchase of search terms is not a "use in commerce" because there is no public promotion of the mark during the search transaction.  *See Daimlerchrysler AG v. Bloom*, 315 F.3d 932, 939 (8th Cir. 2003).   Edina Realty distinguishes *Daimlerchrysler* and argues that there is a visual element here because the Internet user types in the mark as a search term, which is displayed in the tool bar above the results.

While not a conventional "use in commerce," defendant nevertheless uses the Edina Realty mark commercially.  Defendant purchases search terms that include the Edina Realty mark to generate its sponsored link advertisement.  *See Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1064 (9th Cir. 1999) (finding Internet metatags to be a use in commerce).  Based on the plain meaning of the Lanham Act, the purchase of search terms is a use in commerce.

### B.      Likelihood of Confusion

To succeed on claims of trademark infringement under the Lanham Act, the plaintiff must demonstrate that the alleged infringer's use of the protected mark "would likely cause confusion among an appreciable number of consumers."  *Gateway, Inc. v. Companion Prods.*, 384 F.3d 503, 509 (8th Cir. 2004).  "[T]here must be a substantial likelihood that the public will be confused."  *Children's Factory v. Benee's Toys*, 160 F.3d 489, 494 (8th Cir. 1998).  Actual confusion is not essential to a finding of infringement, but the mere possibility of confusion is not enough.  *Id.*

To assess likelihood of confusion in a traditional trademark infringement case, the Court takes the following factors into consideration:

> 1) the strength of the owner's mark; 2) the similarity between the owner's mark and the alleged infringer's mark; 3) the degree to which the products compete with each other; 4) the alleged infringer's intent to pass off its goods as those of the trademark owner . . .; 5) incidents of actual confusion; and 6) whether the degree of purchaser care can eliminate any likelihood of confusion which would otherwise exist.

*3M v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1308 (8th Cir. 1997).

"These factors do not operate in a mathematically precise formula; rather, we use them at the summary judgment stage as a guide to determine whether a reasonable jury could find a likelihood of confusion."  *Duluth News-Tribune v. Mesabi Publ. Co.*, 84 F.3d 1093, 1096 (8th Cir. 1996).  The Court must avoid excessive rigidity when applying the law in the Internet context because emerging technologies require a flexible approach.

*Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999). The parties dispute what factors are most relevant here.[3]

Plaintiff argues that the traditional analysis should be modified because plaintiff is invoking the doctrine of initial interest confusion.[4]   Under the initial interest confusion doctrine, the Lanham Act prohibits a competitor from luring potential customers away from a producer by initially passing off its goods or services as those of the producer's even if confusion as to the source is dispelled by the time any sales are consummated. *See, e.g., Forum Corp. of N. Am. v. Forum, Ltd.*, 903 F.2d 434, 442 n.2 (7th Cir. 1990). Edina Realty argues that under the initial interest confusion doctrine, the following three factors are most important: 1) similarity of the marks; 2) relatedness of the goods and services; and 3) parties simultaneous use of the Internet as a marketing channel. *See Brookfield Communs., Inc.*, 174 F.3d at 1055.

Defendant argues that the traditional analysis should be modified because defendant is invoking the doctrine of nominative fair use.   Under the doctrine of nominative fair use, use of a mark that does not imply sponsorship or endorsement by the

---

[3] The Eighth Circuit has not addressed which factors are most relevant when plaintiff invokes the initial confusion doctrine, *Northland Ins. Cos. v. Blaylock*, 115 F. Supp. 2d 1108, 1119 (D. Minn. 2000), nor when defendant raises a defense of nominative fair use.

[4] Although the Eighth Circuit has not yet considered it, at least seven circuits have adopted the initial interest confusion doctrine. *See Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254 (2nd Cir. 1987); *SecuraComm. Consulting, Inc. v. SecuraCom Inc.*, 984 F. Supp. 286 (D.N.J. 1997), *rev'd on other grounds*, 166 F.3d 182 (3rd Cir. 1999), *appeal after remand*, 224 F.3d 273 (3rd Cir. 2000); *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 204 (5th Cir. 1998); *Forum Corp. of N. Am. v. Forum, Ltd.*, 903 F.2d 434, 442, n.2 (7th Cir. 1990); *Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999); *Australian Gold v. Hatfield*, 436 F.3d 1228, 1238-39 (10th Cir. 2006); *HRL Assocs. v. Weiss Assocs. Inc.*, 12 U.S.P.Q.2d 1819 (TTAB 1989), *aff'd on other grounds*, 902 F.2d 1546 (Fed. Cir. 1990).

trademark holder may be permissible.  *See Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 220 (3rd Cir. 2005).  The Third Circuit identified four factors as most relevant when a nominative fair use defense is raised: 1) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; 2) the length of time the defendant has used the mark without evidence of actual confusion; 3) the intent of the defendant in adopting the mark; and 4) the evidence of actual confusion.  *Id.* at 225-226.  The Ninth Circuit, on the other hand, holds that the traditional test does not apply at all when the defendant asserts nominative fair use.  *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).

The Court considers all six of the traditional factors for assessing likelihood of confusion.  Because the Court finds that a genuine issue of material fact exists, the Court need not decide which precise array of factors is most relevant here.

### 1.    Strength of the Mark

To determine the strength of plaintiff's mark, the Court must classify it as either arbitrary or fanciful, suggestive, descriptive, or generic.  *Duluth News-Tribune*, 84 F.3d at 1096.  The parties agree that plaintiff's mark should be classified as "descriptive."  It is therefore relatively weak, which decreases the likelihood of confusion.

### 2.    Similarity

It is undisputed that defendant uses a mark identical to plaintiff's by purchasing Edina Realty as a search term, placing it in the text of its sponsored link, and placing it in hidden text and links.    Defendant also purchases similar variations, such as

EdinaRealty.com.  The Court finds that defendant's use of the identical mark increases the likelihood of confusion.  This factor does not deserve much weight, however, given defendant's reliance on the nominative fair use defense.  *See Century 21 Real Estate Corp.*, 425 F.3d at 225.

### 3.    Degree of Competition

It is undisputed that plaintiff and defendant offer real estate brokerage services, serve the Twin Cities metropolitan area, and engage in competitive use of the Internet. The Court finds that the degree of competition increases the likelihood of confusion.

### 4.    Intent to "Pass Off"

Defendant argues that it uses plaintiff's mark to advertise the fact that it legitimately has Edina Realty listings on its website, and that it has no intent to confuse consumers about the sponsorship of its website.  For support, defendant points to evidence that it has directed confused consumers back to plaintiff.

As evidence of intent to "pass off," plaintiff points to defendant's persistence in using the mark despite being warned of potential confusion.  *See Century 21 Real Estate Corp.*, 425 F.3d at 227.  Specifically, when Google made defendant modify the text of its sponsored link to reduce confusion, defendant proposed switching to Edina Reality, then Edina MN Realty, then simply Edina.

The Court finds a dispute of fact as to whether defendant has the intent to confuse consumers.

### 5.    Actual Confusion

Although courts must consider the relevant factors when determining likelihood of confusion, evidence of actual confusion is "positive proof" of such likelihood. *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980).  Evidence of actual confusion is especially probative when the defendant asserts a nominative fair use defense. *See Century 21 Real Estate Corp*, 425 F.3d at 226.

The parties dispute whether a handful of emails and phone calls identified by plaintiff are evidence of actual confusion.  In one email, for example, the consumer asks defendant if an offer on a home should be made "through you or the main (Edina Realty) office."  Defendant argues that these phone calls and emails are not evidence of actual confusion.  As to consumers that asked defendant about Edina Realty properties, defendant asserts that these consumers could have thought that defendant had this information because TheMLSOnline.com includes Edina Realty properties.  As to consumers that call defendant and ask for plaintiff, defendant asserts that the consumers were inattentive when recording phone numbers or may have simply misdialed.

Defendant further argues that there is no way to determine the source of any evidence of actual confusion that plaintiff may identify.  Defendant emphasizes that plaintiff never conducted a survey to show that consumers believe they will enter plaintiff's website when they click on defendant's sponsored link.

It is unclear whether the phone calls and emails identified by plaintiff are evidence of actual consumer confusion caused by defendant's use of plaintiff's mark.  A survey that could demonstrate actual confusion is unnecessary, however, because plaintiff need

only show a likelihood of confusion.  The Court determines that the phone calls and emails are sufficient to raise a genuine issue of material fact for the purposes of summary judgment.

### 6.    Degree of Purchaser Care

Both parties agree that the degree of purchaser care is an important factor in assessing likelihood of confusion, but the parties dispute whether there is a high or low degree of purchaser care involved here.  Defendant argues that consumers exercise a high level of care when picking a real estate brokerage firm because real estate is a long-term expensive investment, but argues that consumers do not use the Internet to find a brokerage firm.  Plaintiff argues that consumers do use the Internet to find a brokerage firm, and because of the effortless nature of surfing the web, there is a low level of purchaser care involved.  For support, plaintiff points to a study concluding that 62 percent of consumers do not understand the difference between sponsored links and natural search results.  The Court finds a dispute of fact as to the degree of purchaser care.

Having considered all the relevant factors, the Court concludes that resolution of the factual disputes identified here could cause a reasonable jury to return a verdict for either party.  Accordingly, the Court denies plaintiff's motion for partial summary judgment on its trademark infringement claims.

C.      Nominative Fair Use

Defendant argues that it is entitled to summary judgment on plaintiff's trademark infringement claims because its use of the Edina Realty mark is a nominative fair use.[5] Specifically, defendant uses the Edina Realty mark to advertise the fact that defendant legitimately includes Edina Realty listings on its website.  Where a defendant uses a mark to describe a plaintiff's product, rather than its own, defendant is entitled to a nominative fair use defense provided the following three requirements are met: "(1) that the use of plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service; (2) that the defendant uses only so much of the plaintiff's mark as is necessary to describe plaintiff's product; and (3) that the defendant's conduct or language reflect the true and accurate relationship between plaintiff and defendant's products or services."  *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 222 (3rd Cir. 2005).   Fair use can occur along with some degree of confusion.  *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004).

The Court holds that defendant's use of the Edina Realty mark does not constitute nominative fair use as a matter of law.  Defendant uses the mark as an Internet search term, in its Sponsored Link advertisements, and in hidden text and hidden links on its website.  None of these uses requires the Edina Realty mark.  In its advertisements and hidden links and hidden text, defendant could easily describe the contents of its website by stating that it includes all real estate listings in the Twin Cities.  Similarly, defendant

---

[5] The Eighth Circuit has not considered the doctrine of nominative fair use, but doctrine is well developed in the Ninth Circuit.  *See, e.g., Playboy Enters. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002); *see also Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 225 (3rd Cir. 2005).

could rely on other search terms, such as Twin Cities real estate, to generate its advertisement. In addition, defendant's use of the Edina Realty mark in its advertisement does not reflect the true relationship between plaintiff and defendant. Defendant's advertisement that has appeared on Yahoo, for example, places the Edina Realty mark in the headline, which is underlined and in bold font. The name of defendant's company is listed in much smaller font at the bottom of the ad. Defendant could have done more to prevent an improper inference regarding the relationship. *See Century 21 Real Estate Corp.*, 425 F.3d at 231.

Because the defense of nominative use fails here, the Court denies defendant's motion for summary judgment as to plaintiff's trademark infringement claims.

## III.    Trademark Dilution

The Federal Trademark Dilution Act provides protection and remedies for the "dilution of famous marks." 15 U.S.C. § 1125. Under the Act, an owner of a famous mark "shall be entitled . . . to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark . . . ." *Id.* § 1125(c)(1).

Plaintiff argues that defendant dilutes its mark through "blurring." To establish a claim for trademark dilution by blurring, plaintiff must show that its mark is famous, that defendant began using a similar or identical mark after plaintiff's mark became famous, and that defendant's mark dilutes the distinctive quality of plaintiff's mark by causing consumers to connect plaintiff's mark with different products or services. *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 832 (8th Cir. 1999). Plaintiff must prove actual dilution

but need not use direct evidence.  *Moseley v. V Secret Catalogue*, 537 U.S. 418, 434 (2003).

Ample undisputed facts provide evidence that the Edina Realty mark is famous. Plaintiff has used the mark in association with its real estate brokerage services for over 50 years.  During that time period, Edina Realty has become the largest real estate company in the Midwest, and the third largest independent real estate company in the nation.

Plaintiff has not, however, provided evidence of actual dilution.  Plaintiff primarily relies upon a handful of phone calls and emails from consumers, which may indicate a likelihood of confusion.  Even assuming that this is evidence of actual confusion caused by defendant's use of plaintiff's mark, it does not prove actual dilution. Plaintiff has presented no evidence that the ability of the Edina Realty mark to serve as a unique identifier of plaintiff's services has been weakened.

Accordingly, the Court grants defendant's motion on the trademark dilution claims (Count III and Count V).  The Court denies plaintiff's motion for partial summary judgment on the trademark dilution claims.

This case will be placed on the Court's next available trial calendar.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendant's Motion to Exclude Expert Report and Testimony of Akshay Rao [Docket No. 47] is **DENIED**.

2.      Defendant's Motion for Summary Judgment [Docket No. 34] is **DENIED** as to the trademark infringement claims and **GRANTED** as to the trademark dilution claims, as set forth in Part II and Part III of this Opinion.

3.      Plaintiff's Motion for Partial Summary Judgment [Docket No. 36] is **DENIED**.


DATED:   March 20, 2006                    _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                         JOHN R. TUNHEIM
                                         United States District Judge